[Civil No. 3212. Filed November 16, 1932.]

[15 Pac. (2d) 961.]

STATE TAX COMMISSION OF THE STATE OF ARIZONA, THE STATE BOARD OF EQUALIZATION OF THE STATE OF ARIZONA, E. A. HUGHES, FRANK LUKE, and M. A. MURPHY, Members of Said State Board of Equalization, and the COUNTY OF PINAL OF THE STATE OF ARIZONA, Appellants, v. MAGMA COPPER COMPANY, a Corporation, Appellee.

98

88 Mr. K. Berry Peterson, Attorney General, Mr. Charles L. Strouss, Assistant Attorney General, and Mr. W. E. Truman, County Attorney, for Appellants.

Messrs. Rice & Mathews, for Appellee.

LOCKWOOD, J.—Magma Copper Company, a corporation, hereinafter called plaintiff, brought suit against the State Tax Commission, hereinafter called the commission, and the county of Pinal, to review the valuation of plaintiff's producing mines for the year 1930, fixed by the Commission at some $14,000,000. The matter was heard before the court sitting without a jury, and, on March 2d, 1932, findings of fact and conclusions of law were filed, and a judgment fixing the value of the mine in question at $8,712,000 was duly rendered, and it was ordered that the county of Pinal refund the plaintiff the sum of $109,620.55, being the excess tax paid by plaintiff, as required by law,

as a condition precedent to the filing of this suit. From this judgment the defendants have appealed.

There are eight assignments of error, but the question raised by all eight is in effect the sufficiency of the evidence to sustain the judgment, and we therefore consider them as one. The trial court in fixing the value of the mine in question followed the usual and correct rule of estimating the probable gross revenue to be received from the ore presumably contained in the mine; deducting therefrom the probable cost of extraction, reduction, and selling the product of the ore, including therein all factors of cost, and reducing the difference, which would be the net value of the product, to its present worth, based upon such net value and the length of time it would probably take to produce it. It is conceded, as it must be, that this formula is the proper one to be used in determining the actual cash value for taxation of a producing mine at any particular time. Defendants, however, contend that the trial court erred as a matter of law in its estimate of the cost of production in that it included in such cost some $4,100,000 as a future development cost which was not reasonably necessary for the extraction and reduction of the ore on which the gross value of the mine was based.

Plaintiff contends we cannot consider this objection because the findings of fact of the trial court on which defendants' contention is based are not properly findings of ultimate fact, but of evidentiary facts, and that this court cannot review such findings, but must confine itself to what plaintiff claims to be the only proper ultimate finding, to wit, that the cash value of the mine in question as of the date of the assessment for 1930 was $8,712,000, and no more.

We consider first, as a matter of practice, what the findings of a trial court should include. Section 3819, Revised Code 1928, reads in part as follows:

" . . . The court may, and shall at the request of either party, make written findings of fact stating the facts found and the conclusions of law separately. . . . "

In determining the nature of these findings we must consider the purpose of making them at all. Obviously their only value is to make it possible for the appellate court to determine the theory upon which the trial court reached its judgment, so that it can be decided whether the judgment, as a matter of fact and law, is sustained by the record. We have consistently held that, when a trial court returns a general judgment without findings of fact, if there is any theory of the case upon which the judgment can be sustained and any reasonable evidence in the record supporting such theory, we will assume that the trial court has adopted that theory and believes the evidence supporting it, and that we will not disturb its judgment because other evidence in the record supports a theory of the case requiring a different judgment as a matter of law. It follows necessarily as a corollary that, if it appears affirmatively in the record that the facts found by the trial court, and on which its judgment is expressly based, are not sustained by the evidence, or as a matter of law would not sustain its judgment, we should reverse the case. If, therefore, findings of fact are made, they should be sufficient so that we may determine upon what presumptive state of facts the trial court rendered its judgment.

The question involved herein has been well discussed in the case of *Apodaca* v. *Lueras,* 34 N. M. 121, 278 Pac. 197, wherein the court says:

" . . . It is the trial court's duty to make findings of the essential or determining facts, on which its conclusion in the case was reached, specific enough to enable this court to review its decision *on the same grounds as those on which it stands.*" (Italics ours.)

In this case, in order to reach the proper conclusions as to the actual cash value of the mine in question, it was necessary that the court, in substance, follow the method of valuation we have set forth above. One of the essentials in such method is the cost of production properly chargeable against the gross value of the product. This was fixed by the court at $.088 per pound of copper produced, and, in determining whether this is correct, it is necessary that we examine the evidence to find what elements were considered by the trial court as proper costs of production in reaching this amount. We think the findings of the court complained of were of the nature contemplated by the statute, and that the assignment of error properly presents to us the question of whether the evidence supports such findings as to the probable cost of production per pound.

It appears from the record that all of the witnesses included as a part of their estimate of the cost per pound the sum of $.0138 for what they call "development." We consider then the question as to whether such work is properly chargeable against the gross value of the proved and probable ore in a mine in determining the actual cash value of the mine. This will depend upon what is included under the term "development." If thereby is meant work done which is not reasonably proper or necessary for the extraction and reduction of the ore estimated in determining the gross value of the mine, we are of the opinion that it is not a proper charge. The only proper cost of taking out ore is what is reasonably necessary to extract and reduce that particular ore. If it were not reasonable to believe that further ore, worth more than the cost of producing it, would be found by further explorations, it would be absurd for the owner of the mine to spend money in seeking for something he knew was not in existence or had no reasonable ground for believing existed, and charge such cost

against the value of what he knew existed. If, on the other hand, reasonable men would agree that future exploration would probably develop future ore of greater net value than the cost of development, it would be proper mining practice to spend a greater or less further sum in such exploration, and it could properly be charged against the value of the mine, but in such case *the mine must be given credit for an extra value based on the reasonable prospects of finding further ore.* We realize that this, of course, is a matter of probability and opinion almost entirely, but this is true, as to the probable future earnings and therefore present value of any property, and is subject to the same rule for determination, that is, the testimony of experts upon the subject, and the trial court from this testimony decides what in its judgment is the probable present value of such future prospects.

If, however, by "development" costs is meant in reality the work reasonably necessary in order to extract the ore, either proved or probable, *for which allowance has already been made in estimating the gross value of the mine,* such work is a legitimate charge against such gross valuation.

We consider then the evidence upon this point. Defendants base their claim that the court allowed a charge of some $4,100,000 as exploration costs against the ore proved and probable, without allowing for the ore which might reasonably be expected to be developed by such work, on the contention that all the ore calculated by the experts as representing the gross value of the mine was located above the 3,000 foot level, while much if not most of the work represented by the $.0138 per pound of copper for development work was to be done below that level, and was not necessary to extract the ore credited as the gross value of the mine.

Apparently there was no allowance made for any ore below the 3,000 foot level in estimating the gross value of the mine. If, in order to extract the ore *above* the 3,000 foot level it would be reasonably necessary to expend the amount testified to by the experts for development work, even though the work actually was done *below* that level, the evidence sustains the finding of the court on costs. If, on the other hand, such work would not reasonably be necessary to extract the estimated ores, the court was not justified in using the cost figures which it did. The evidence of the experts on the point involved is ambiguous. The strongest in behalf of the claim of plaintiff that the amount allowed by the court for "development" was reasonably necessary for the extraction of the proved and probable ore is as follows:

"Mr. Mathews. Q. Mr. Finch, you were asked about the development cost of approximately 1.38 cents per pound. Please state whether or not that development is necessary and, if so, for what purpose? A. It is necessary if the mine is going to continue at all for any considerable period. It is good practice and generally done to keep the development of ore ahead, which, at least, equals the amount of ore that is being taken out year by year. That must be done to keep the continuity of operations, and it takes that amount of money in this case to do that and to justify what, in this mine, is a very vital condition, a ventilation which will supply the mine with proper air to breathe, and a proper temperature in which to work, because this mine is naturally around somewhere, 115 to 120 degrees regular temperature, so ventilation is tremendously important and it takes openings and shafts and large openings between shafts supplying sufficient space so that a very large volume of air can be passed through them freely to enable miners to work and live there at all. So I regard the development cost as a very moderate and proper one.

"Q. Please state whether or not it would be possible to mine the ore in this body of probable ore,

described by you, without development work? A. No*t,* it would not. . . . "

That most strongly supporting the theory of defendants is as follows:

"Q. Now, the allowance in cost of production of $4,100,000.00, if you simply remove the developed ore and the probable ore, would it be necessary to make that total allowance of $4,100,000.00, simply to remove that ore? A. No, sir.

"Q. The larger part of that is for the purpose of seeking new ore, is it not? A. Yes, sir. . . . "

We have examined the entire transcript of evidence with care. The burden was, of course, upon plaintiff to establish affirmatively its contention that the assessment was excessive to the extent indicated by the judgment of the trial court. In order to reach this conclusion it was necessary that it appear affirmatively that the amount of $4,100,000, which the experts substantially agreed should be charged as development costs, was necessary for the extraction and reduction of the ore credited on the gross value of the mines, and that no portion of said $4,100,000 was used for purely exploration work when no allowance was made for the reasonable prospect of finding future ore thereby, which alone would justify the expenditure of any amount in exploration. The evidence on this point, in our opinion, is not sufficiently explicit and definite to support the burden placed upon the plaintiff.

We can find no errors, nor are any assigned, in regard to the other elements entering into the value of the mine. Under such circumstances it is not necessary that there be a general retrial of the case, but merely that the particular point on which we have indicated the evidence is not sufficient be determined. The judgment of the superior court of Pinal county is reversed and the case remanded, with instructions to retry the issue as to the proper amount

to be charged against the gross value of the mine for exploration or development costs, and to render such judgment as may then be proper in accordance with the principles set forth in this opinion.

McALISTER, C. J., and ROSS, J., concur.