[Civil No. 4745. Filed April 6, 1945.]

[157 Pac. (2d) 693.]

THE STATE TAX COMMISSION OF THE STATE OF ARIZONA; THE STATE BOARD OF EQUALIZATION OF THE STATE OF ARIZONA; THAD M. MOORE, D. C. O'NEIL and JOE HUNT, Members of and constituting said State Tax Commission and said State Board of Equalization; and THE COUNTY OF YAVAPAI, STATE OF ARIZONA, Appellants, v. PHELPS DODGE CORPORATION, a corporation, Appellee.

Mr. Joe Conway, Attorney General, and Mr. Thomas J. Croaff, Assistant Attorney General, for Appellants.

Messrs. Ellinwood & Ross, and Mr. Norman S. Hull, of Phoenix, Arizona; Messrs. Crawford, Baker and Favour, and Mr. A. M. Crawford, for Appellee.

LaPRADE, J.—This is a puerile appeal from a judgment of the Superior Court of Yavapai County, determining that for the *ad valorem* tax year of 1943 the State Tax Commission had over-assessed the producing mining claims of the appellee Phelps Dodge corporation's copper mining claims in Yavapai County, commonly designated as its United Verde Branch, to the amount of $7,477,770, and awarding judgment against the county in the sum of $89,968.67, account overpayment of taxes. The company paid its taxes under protest and appealed to the Superior Court as provided for in Section 73–110, Arizona Code Annotated 1939. This appeal invoked the jurisdiction

of the Superior Court "to find the full cash value of the property and render judgment." This section requires an independent and original inquiry into the matters affecting valuation in that it expressly authorizes the trial court to consider "evidence of any matters that relate to the full cash value of the property" and directs that "Should the court find that the assessment is excessive, then the court shall find the full cash value of the property, and render judgment for appellant and against the county; . . . " *State Tax Commission* v. *United Verde Extension Mining Co.*, 39 Ariz. 136, 4 Pac. (2d) 395; *State Tax Commission* v. *Magma Copper Co.*, 41 Ariz. 97, 15 Pac. (2d) 961.

The record discloses that the officers of the corporation appeared before the State Tax Commission in June, 1943, and gave evidence as to the value of the producing mining claims herein involved. The minutes of the Commission dated July 8, 1943, read as follows:

"Mine Assessments

"The commission after final consideration of all mine tax statements filed in its office by producing mines, together with all other information indicating the value of said producing mines, by a vote of Chairman Moore and Member Hunt, passed and adopted the following resolution:

. . . . . . . . . . .

"Now, therefore, be it resolved, that the State Tax Commission does now determine, fix, apportion and certify for the year 1943 for the purpose of taxation the valuation of all producing patented and unpatented mining claims or groups thereof, as further described in the certificates made by this commission to the various county Boards of Supervisors, copies of which are on file in this office, and are hereby a part of these minutes, said valuations being as follows:

. . . . . . . . . . .

"Phelps Dodge Corp. (United Verde Br.) 11,463,-031.00."

On this resolution, Member O'Neil of the Commission voted no, and in explanation of his vote made the following statement:

"This department has reports from our own engineer on the following: (other mines not herein involved) Phelps Dodge, Verde Branch and proposed valuation in no instance conform to engineer's reports. To be able to sustain a valuation there must be some basis for same."

On August 5, 1943, the corporation, represented by a valuation engineer and its attorney, appeared before the State Tax Commission sitting as the State Board of Equalization, and protested the valuation fixed, this in writing and stating its reasons therefor. The commission by the vote of Commissioners Moore and Hunt, Commissioner O'Neil not being present, denied the protest.

Our Statutes require assessment of real estate, including mines, and improvements and personal property for *ad valorem* tax purposes, Section 73-202, Arizona Code Annotated 1939, and impose upon the State Tax Commission the duty of assessing producing mining claims, Section 73-106, *Id.*, and impose upon the County Assessor the duty of assessing non-producing mining claims, improvements, and personal property, Section 73-402, *Id.* As heretofore stated, the State Tax Commission assessed the producing mining claims involved at $11,463,013; the County Assessor assessed the other property at $3,109,079; thereby imposing upon all the property of the United Verde Branch an assessment in the aggregate sum of $14,572,100.

Section 73-203, Arizona Code Annotated 1939, prescribes "full cash value" as the basis for assessment, and defines the term as "the price at which property would sell if voluntarily offered for sale by the owner thereof, upon such terms as such property is usually sold, and not the price which might be realized

if such property were sold at a forced sale.'' The issue before the trial court was the full cash value of the property at the time the assessment was made. State Tax Commission v. United Verde Extension Mining Co., *supra*. The assessed valuation of the plant, mill, and personal property made by the County Assessor and fixed in the sum of $3,109,079 was not protested and was assumed by all the parties at the trial to be correct. The various estimates of ''full cash value,'' testified to by the several engineers, included the value of the entire workings—plant, mill, personal property, and mine. It was made to appear from their testimony that the plant, mill, and personal property were of no value, except for salvage purposes, without the mine, and likewise that the mine was of no value without the plant, mill, and personal property. To find the ''full cash value'' of the mine, as distinct from the plant, mill, and personal property, requires that the amount fixed by the County Assessor, to-wit $3,109,079, as the assessed valuation of the plant, mill, and personal property, be subtracted from the individual estimates of the engineers to arrive at the valuation placed on the mine alone by any particular valuation engineer. All the valuation engineers adopted as correct the assessment of the plant, mill, and personal property made by the County Assessor. The court also adopted the County Assessor's assessment of the plant, mill, and personal property. In this behalf the court's judgment reads as follows:

''The full cash value of said United Verde Branch is and was $7,094,340, and the full cash value of the producing mining claims thereof is and was $3,985,261, for the ad valorem tax year 1943-1944.''

▪■ The burden was upon the plaintiff company to establish affirmatively its contention that the assessment was excessive. State Tax Commission v. Magma Copper Company, *supra*. The company promptly as-

sumed this burden. It called four experienced mining and valuation engineers who testified as to:

(1) The tonnage (quantity and quality of the ore);

(2) The life of a mine (amount and time of production);

(3) The future net profits (during the remaining life of the mine);

(4) The present worth of such profits (full cash value as of the date of valuation).

These engineers in estimating the full cash value made allowances for probable salvage values in the plant, supply materials, and tools that might reasonably be expected to be on hand when the mine should cease to be an active producer. In addition to the valuation engineers, the superintendent of the mine gave testimony supplementing that of the engineers. All of the witnesses testified as to the tonnage, and, in so doing, made appropriate references to charts showing the working levels and geological conditions of the mine. All but one testified as to costs. All but two testified as to metal prices and profits. The engineer W. C. Browning estimated the present-day (time of assessment) value of the entire property (mine and plant) was $5,193,624. The engineer George M. Colvocoresses estimated that the fair cash value at time of assessment of the entire property, including mine and plant, was $7,094,340. The engineer H. H. Fields estimated that the full cash value of the entire property, mine and plant, was $6,348,852. These witnesses were all thoroughly cross-examined on their experience, their personal examination of the premises, and their sources of original information. The company's books, surveys, assays, mining reports, costs, and profits, were all available to the Commission at the trial and before the trial, and were offered in evidence and considered by the trial court. Commissioners Moore and Hunt did not testify. No engineers and no appraisers were called by the defendants. They rested their case on the

cross-examination of plaintiff's witnesses and on the submission of a tabulation prepared by the chief accountant for the Income Tax Division of the State Tax Commission. This witness identified a compilation of the *ad valorem* tax statements filed by the company for the years 1935 to 1942, both inclusive, together with a compilation depicting the net income of the company from the operations of this property for the several years 1935 to 1942, both inclusive.

As early as 1931, this court inferentially approved a basis or method by which the actual cash value of a producing mine could be arrived at. State Tax Commission v. United Verde Extension Mining Co., *supra.* With reference to such basis, the court then made the observation [39 Ariz. 136, 4 Pac. (2d) 397]:

"It (basis) may be stated substantially in the language of one of the witnesses as follows: 'The reserve of ore in the property, the measure of their salable contents of valuable metal, is ascertained. Its value is estimated in total, and from these total gross proceeds, from the ore reserves, there are deducted the costs of recovery and sale, and the difference represents the net proceeds from these ore reserves. These net proceeds are then discounted to present worth.' "

This court again in the Magma Copper Co. case, *supra,* decided in November, 1932, approved a method in fixing the value of a mine, using the following language [41 Ariz. 97, 15 Pac. (2d) 962]:

" . . . The trial court in fixing the value of the mine in question followed the usual and correct rule of estimating the probable gross revenue to be received from the ore presumably contained in the mine; deducting therefrom the probable cost of extraction, reduction, and selling the product of the ore, including therein all factors of cost, and reducing the difference, which would be the net value of the product, to its present worth, based upon such net value and the length of time it would probably take to produce it. It is conceded, as it must be, that this formula is the

proper one to be used in determining the actual cash value for taxation of a producing mine at any particular time. . . . "

Presumably at the time of the assessment, Commissioners Moore and Hunt were aware of an approved formula or method to be used in fixing the valuation of a mine for tax purposes. Certainly Commissioner O'Neil was. Before the trial in this case, the record affirmatively discloses that Commissioner Moore was aware of the technique involved in assessing a mine and the character and quality of proof that would have to be offered in the Superior Court to sustain the assessment of the Commission. This appears in an affidavit to vacate the trial setting, verified by him on December 10, 1943, and filed in the case, which, in part, reads as follows:

" . . . the sole question to be determined herein is the actual cash value of plaintiff's said property, and such testimony cannot be obtained from any other source than from competent engineers, appraisers and witnesses, who have made a thorough study, examination and appraisal of said properties of the plaintiff."

As above indicated from the remarks of Commissioner O'Neil at the time that he objected to the assessment, it appears that the Commission then had in its employ a valuation engineer who had, for the information of the Commission, valuated the property. Notwithstanding the obligations devolving upon the Commission at the trial and the burden it had to carry, the two Commissioners Moore and Hunt stood mute, and offered no testimony in substantiation of the assessment other than the evidence offered by the Income Tax Division accountant above mentioned, and to which we will hereafter refer.

Appellants' sole assignment of error reads as follows:

(a) The Court should not have *deducted* the value of the property assessed by county assessor from the value of the mine; nor *added* the salvage value thereto.

(b) The Court should have considered the entire history, operations and life of the property, and its reasonable future productivity, including past profits as well as probable future profits, in finding the full cash value of the property when valued and assessed for 1943.

(c) The Court was not justified, nor under all the evidence, permitted to adopt the testimony and theories of the one witness, George M. Colvocoresses, in overthrowing the valuation fixed by the Tax Commission, and reviewed by the Equalization Board.

(d) The full cash value of the producing mine property as fixed by the Tax Commission and then reviewed by the Equalization Board is by law presumed to be correct and lawful, and should have been by the trial Court sustained.

Appellants have challenged the correctness of the holding of this court in the case of State Tax Commission v. Magma Copper Co., *supra,* insofar as it approved the method and formula used by the trial court in determining the full cash value of a mine for taxation purposes. They complain that the court, in the absence of a statutory method of valuation of property, could not say that any one method is the sole and only method to be used. They further suggest that the formula approved in that case was only applicable to the facts of that particular case. They contend that the only method for the valuation of an operating mine for taxation purposes is that set forth in section 73–203, *supra.* It is true that there is no statutory formula for the guidance of the Commission in determining the "full cash value" other than the code section which says that the term "full cash value" shall mean "the price at which property would sell if voluntarily

offered for sale by the owner thereof, upon such terms as such property is usually sold, and not the price which might be realized if such property were sold at a forced sale."

 The difficulty in applying this statutory rule to large producing mines is apparent. Seven-million-dollar mining properties are not bought and sold every day. This court takes judicial knowledge of the well-known fact that such properties seldom change hands. Evidence of a recent sale in the open market would be relevant only as to the value of the mine on the day of the sale. The value of a producing mine at a date subsequent to its sale would naturally be affected by many factors, such as market, cost of production, price of metal, and mine depletion. It is for these reasons that business men, taxing authorities, and courts, all search for a practical basis or formula to estimate the value of a producing mine for sale or tax purposes. With reference to the *modus operandi* to be followed by the State Tax Commission, this court in United Verde Extension Mining Co. case, *ante,* used the following language:

"In fixing this assessment, the assessing body may make such investigations as may be necessary in order to determine all the facts bearing upon the true value of the property, but, no matter what method they may use, or what evidence they have, the ultimate result must comply with the rule set forth in section 3068, . . . . " (Now section 73–203)—i.e., "full cash value."

The formula approved in the United Verde Extension Co. and Magma Copper Co. cases, *supra,* we believe to be the most practicable and reliable so far devised. It is the product of our best minds, business and scientific. Appellants, in support of subsection (d) of their assignment of error, argue that by virtue of the provisions of section 73–110, Arizona Code Annotated 1939, the assessment of the Tax Commission is

presumed to be correct and lawful; that for this reason the trial court should have sustained the assessment.

The presumption, although declared by statute, is one of fact, and may be rebutted and overcome by the evidence as it was in this case. If this were not true, the provisions of the statute authorizing the Superior Court to hear "evidence of any matters that relate to the full cash value of the property" and requiring it to "find the full cash value of the property" would be meaningless, and the decisions of this court in Magma and United Verde Extension cases, *ante,* could not be explained.

A presumption so declared by law is raised only in the absence of evidence on the ultimate fact in question. It is not in and of itself evidence, but is purely an arbitrary rule imposed by the law, to be applied when there is no evidence to the contrary. Whenever evidence contradicting the presumption is received, the presumption disappears, and the trial court is bound to follow the usual rules of evidence in reaching the ultimate conclusion of fact. The presumption is never to be placed in the scale and weighed as evidence. When the opposite party has produced *prima facie* evidence, the presumption has spent its force and served its purpose, and the party in whose behalf it had theretofore operated must meet the opponent's *prima facie* case *with evidence and not with presumptions.* The foregoing principles were stated and applied by this court in *Seiler* v. *Whiting,* 52 Ariz. 542, 84 Pac. (2d) 452, 455, wherein the following quotation was lifted from *Mackowik* v. *Kansas City, etc. R. Co.,* 196 Mo. 550, 94 S. W. 256, 262:

"Presumptions may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts."

The presumption which existed at the inception of the judicial proceedings spent its force and

was overcome by plaintiff's *prima facie* case. The failure on the part of defendants to challenge such evidence, other than by "talk," and their failure to supply any valuation evidence, removed them from the operative effect of the presumption. In any event, the presumption would have no place on this appeal, as the valuation fixed by the lower court, on substantial evidence, must stand. State Tax Commission v. United Verde Extension Mining Co., *ante.*

■ Defendants' argument assumed, without illustration or deduction, and with no citations and but little comment, that the entire testimony of all of the valuation engineers was meaningless and should be disregarded. It is not suggested by them that the testimony did not conform to accepted valuation principles, or that the testimony was modified, weakened, or otherwise affected by cross-examination, but only that it was without weight, as being of opinion in nature and elicited with the object of reducing the assessment, and as being based upon plaintiff's records. These are matters which were properly considered below, but are not for this court to pass upon.

Appellants, by subsection (b) of their assignment of error, assert that the trial court should have considered the entire history, operations, and life of the property, and its reasonable future productivity, *including past profits.* Here, again, it can be said that there is nothing in the record to indicate that the trial court did not consider all of the evidence, including such as was put into the record relative to the history of the mine and its earnings during earlier years. The only inference justified by the record is that the trial court did, when the evidence was received, and, while it had the case under advisement, consider all of the evidence, but that it placed little, if any, weight to the past earnings. The weight of such evidence was solely for it to deter-

mine, and it was amply justified by the law and the testimony in reaching its conclusions thereon.

Ore which produced past profits has been extracted and sold; past profits have been taxed in former years; past profits, either gross or net, have little or no bearing upon future profits, because conditions, past, present, and future, are utterly dissimilar. It is the present worth of the future profits and not the past profits which determine the value of a producing mine. This court in United Verde Extension Mining Co. and Magma Copper Co. cases, *ante,* in approving a standard method of mine valuation, left no room for consideration of past productivity or past profits. The same view is expressed in 95 A. L. R. page 442, in an explanatory statement accompanying an annotation on the subject of income as a factor in valuing real estate for tax purposes, as follows:

"Because of the special nature of the property, cases involving taxation of mining property or of land producing oil and gas are not included herein. It may be noted, however, that the doctrine that income is a criterion for valuation for purposes of taxation has been regarded as peculiarly inappropriate to taxation of mining property, in relation to which each year's income represents to that extent a diminution in the actual intrinsic value of the property."

Defendants below cross-examined the several valuation engineers as to whether or not past profits and production were relevant in mine valuation and each stated that such matters had no bearing on the subject. In this behalf, the witness Colvocoresses testified as follows:

"I will say that, not only as an engineer, but as a man who hopes that he can apply a certain amount of ordinary common sense to this problem, I see absolutely no connection between past profits of a mining operation and the value at a given date.

．　　．　　．　　．　　．　　．　　．　　．　　．　　．

" . . . the pounds of copper or ounces of gold that are taken out of a mine has decreased its value, and at any given time the value of that mine would depend not at all upon what has come out of it in the past, but entirely on what is going to come out of it in the future."

The trial court, after considering and weighing all of the evidence, proceeded in strict accordance with that evidence and with the law to find that the assessment was excessive, and thereupon fixed the full cash value of the property and entered its judgment accordingly. There was substantial and ample evidence to sustain the findings and judgment, and that evidence was uncontradicted and unopposed. Such valuation must stand, and the judgment of the lower court is affirmed.

STANFORD, C. J., and MORGAN, J., concur.