716 P.2d 430

**ARIZONA PUBLIC SERVICE COMPANY, an Arizona corporation, Plaintiff/Appellee, Cross-Appellant,**

v.

**CITY OF PHOENIX, a municipal corporation of the State of Arizona, Defendant/Appellant, Cross-Appellee.**

**No. 2 CA–CIV 5561.**

Court of Appeals of Arizona, Division 2, Department B.

Jan. 29, 1986.

Reconsideration Denied March 10, 1986.

Snell & Wilmer by Edward Jacobson, and Stephen C. Newmark, Phoenix, for plaintiff/appellee, cross-appellant.

Andy Baumert, City Atty. by Philip M. Haggerty, Phoenix, for defendant/appellant, cross-appellee.

## OPINION

LACAGNINA, Judge.

Both the City of Phoenix (City) and Arizona Public Service (APS) appeal the trial court's review of an administrative hearing officer's ruling regarding a 39-month audit assessment for city privilege license taxes. The City claims the trial court erred as follows:

1. By finding that APS properly deducted the gross franchise fees from all three classes of customers in computing its tax;

2. By finding that as a result of its error in failing to collect taxes for sales of energy to nursing homes during a six-and-one-half-month period, APS should pay a penalty for that period only; and

3. By finding that APS was not subject to an equipment rental tax for its computer services income.

APS claims the trial court erred by finding that the Arizona Corporation Commission does not have exclusive jurisdiction concerning any refund owing from overcollection of privilege license taxes.

We agree with APS and affirm the judgment below but reverse that portion allowing the City to claim the overcollection. The facts pertinent to each issue will follow.

## I

### APS FOLLOWED ALL APPLICABLE ORDINANCES IN COMPUTING TAX

APS determined its privilege license tax owed to the City in the following manner:

1. It calculated 2½% of its gross revenues from all three classes of customers in the City (commercial, residential and industrial);

2. It calculated 2% of its gross revenues from the two classes of customers by which the franchise fees are measured (commercial and residential); and

3. It deducted the total franchise fees from the privilege license tax to determine the tax liability.

This follows the exact procedure outlined in the City ordinance.[1]

**1.** The applicable section [14(d)(1)] sets the amount of the tax as follows:

(d) *At an amount equal to two and one-half percent of the gross income from the business upon every person engaging or continuing within the city in the business of furnishing to consumers within the city electricity, electric lights, current, power, gas (natural or artificial),* domestic water, or in transmitting local or long distance messages or conversations by telephone, or messages by telegraph, from within the city to another point in the state, including gross income derived from any services rendered subscribers within the corporate limits of the city in connection with the publication of any directory.

1. In computing the amount of this tax *there shall be allowed as an offset against this tax full credit for any and all franchise fees paid to the city pursuant to the terms of a presently existing franchise by anyone engaged in and holding a city franchise for any of the businesses heretofore described,* such franchise fees to include all fees and payments made which are based on gross receipts realized from sales to specified classes of customers within the city. Such offsets or credits shall not be deemed in conflict with or in violation of Section 24–72 of this Code.
(Emphasis added).

We find no support either in the clear language of the ordinances or in the record for the City's argument that APS should have subtracted the total franchise fees from the tax received from residential and commercial customers only. Nor is there support for the City's argument that failure to deduct from these customers only resulted in an overcollection. The franchises are intended to benefit all classes of APS customers, not just commercial and residential.[2] That industrial revenues are not included in the computation does not change the clear intent of the ordinances.

## II

### TRIAL COURT PROPERLY ASSESSED PENALTY FOR NURSING HOME ERROR

During the last six and one-half months of the audit, APS failed to pay a privilege license tax on revenues from four nursing homes, totalling $20,868.00. The trial court relied on APS's expert testimony concerning the results obtained from a manual search of company records, and

**2.** Ordinance No. S–4817 (gas franchise) exists "for the purpose of constructing, maintaining and operating ... in the City of Phoenix, Arizona, ... gas mains, supply lines, laterals, and distribution systems ... for the purpose of supplying ... natural gas, to the City, its successors, the inhabitants thereof, and persons and corporations either within or beyond the limits thereof for light, heat, power and other purposes * * for the purpose of supplying natural gas and/or artificial gas, ... to the said City, its successors, the inhabitants thereof, and all persons and corporations either within or beyond the limits thereof for all purposes." Ordinance No. S–695 (electric franchise) exists "for the purpose of constructing, maintaining and operating ... in the City of Phoenix, Arizona, electric light and power lines, ... for the purpose of supplying said electricity to the said City, its successors, the inhabitants thereof, and persons and corporations within the present or any future limits thereof for light, heat, power and other purposes; * * * for the purpose of supplying electricity to the said City, and its successors, the inhabitants thereof, and persons and corporations within the present and any future limits thereof, for light, heat, power and other purposes by reason of the use of electricity."

**64**

this evaluation of the testimony and the accuracy of this search was within the trial court's discretion. *Selby v. Savard,* 134 Ariz. 222, 655 P.2d 342 (1982); *Englehart v. Jeep Corporation,* 122 Ariz. 256, 594 P.2d 510 (1979). We find no error in its admission or in the court's reliance on the search for its findings. We need not decide the propriety of the City's sampling technique because the trial court did not base its decision on that evidence.

### III

### TRIAL COURT PROPERLY FOUND APS COMPUTER SERVICES EXEMPT FROM TAXATION

The computers, owned and operated by APS and under its complete direction and control, were properly found by the trial court to be exempt services and not a taxable rental of equipment. *State Tax Commission v. Peck,* 106 Ariz. 394, 476 P.2d 849 (1970). APS first raised the issue in its protest petition without contradicting evidence from the City as to the legal or factual issue, a requirement in order to support the assessment. *See Graham County v. Graham County Electric Coop., Inc.,* 109 Ariz. 468, 512 P.2d 11 (1973); *State Tax Commission v. Phelps Dodge,* 62 Ariz. 320, 157 P.2d 693 (1945).

### IV

### CORPORATION COMMISSION HAS EX-CLUSIVE RIGHT TO DETERMINE DISPOSITION OF ADMITTED OV-ERCOLLECTION

The parties agree that APS overcollected $146,569 under a tax adjustment formula ordered by the Arizona Corporation Commission. APS argues that any refund, if allowed, including the timing and manner of its distribution, is to be determined solely by the commission. This is because the commission has exclusive ratemaking authority, not to be invaded by any branch of government. Ariz.Const. art. 15, § 3; *State v. Tucson Gas, Electric Light and Power Co.,* 15 Ariz. 294, 138 P. 781 (1914).

All privilege license taxes, and tax adjustment formulas used to determine such taxes, are part of the rate schedules to be filed with and approved by the commission. Only the commission can determine an overcollection. *Scates v. Arizona Corporation Commission,* 118 Ariz. 531, 578 P.2d 612 (1978). It is also within the commission's exclusive jurisdiction to determine if a refund obligation exists and the manner of distribution. *Mountain States Telephone & Telegraph Co. v. Arizona Corporation Commission,* 124 Ariz. 433, 604 P.2d 1144 (App.1979).

We reverse the trial court's ruling allowing the City to retain the overcollected $146,569 and remand for entry of judgment in favor of APS on that issue.

Affirmed in part, reversed in part and remanded.

LIVERMORE, P.J., and HOWARD, J., concur.