647 P.2d 178

STATE of Arizona, Appellee,

v.

Mark Claude NAVARRE, Appellant.

No. 5343.

Supreme Court of Arizona, En Banc.

June 10, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Hirsch & Saltsman by Ronald Saltsman, Phoenix, for appellant.

HAYS, Justice.

The Pinal County Grand Jury indicted appellant, Mark Claude Navarre, on one count of murder, two counts of kidnapping and one count each of burglary, aggravated assault, and unlawful use of means of transportation following the shooting death of his ex-wife. After a jury trial, appellant was found guilty of all charges and sentenced to life imprisonment without the possibility of parole for 25 years on the murder charge and terms of 10.5 years each for kidnapping and burglary, 7.5 years for aggravated assault and 1.5 years for unlawful use of means of transportation. All sentences were to run concurrently.

Appellant appealed the judgments of guilt and the sentences imposed on all

charges. We have jurisdiction pursuant to A.R.S. §§ 13-4031 and 13-4035.

Appellant admits he shot his ex-wife, Lois Navarre, but maintains that the shooting was not premeditated. Testimony elicited at trial indicates that appellant attempted reconciliation with his former spouse on numerous occasions but that she avoided seeing him, twice by seeking refuge at a neighbor's house. On the evening of August 9, 1980, appellant went to the residence of his ex-wife to talk about their problems. He gained admittance by breaking the window in the kitchen door and unlocking it. Upon hearing him enter, Lois ran to her bedroom and shut the door. Appellant knocked open the bedroom door and forced Lois, who was wearing only a T-shirt and panties, and her son to walk outside to Lois' car. Appellant ostensibly wanted to discuss the couple's problems while driving around in the car. Prior to entering the vehicle, Lois broke into a run and headed for her neighbor's house. Appellant ran after her. He claims he panicked and shot Lois three times in the neighbor's carport. He then left in his former wife's car, but voluntarily surrendered at the Casa Grande police station approximately two hours after the shooting. Lois Navarre later died from the gunshot wounds.

Appellant's trial lasted four days. On the second day of trial the victim's bloody T-shirt and panties were shown to the jury and admitted into evidence. The trial transcript for that day, however, is not available. The prosecution prepared a reconstruction of the record of the second day of trial pursuant to Arizona Rules of Criminal Procedure, rule 31.8(f).*

On appeal appellant contends:

1) Introduction of the victim's bloody T-shirt and panties plus a photograph of a pool of the victim's blood constituted reversible error because the items were presented in a manner intended only to arouse and inflame the emotions of the jury.

2) Because a material portion of the record is missing through no fault of the appellant, he is entitled to a new trial.

3) Appellant is entitled to a new trial because he did not receive effective assistance of counsel.

## INTRODUCTION OF EXHIBITS

The prosecution's reconstruction of the record for the second day of trial reflects the presentation, identification and admission of 16 different exhibits. The reconstructed record indicates that the victim's bloody T-shirt, panties, and an overlay of the carport area were "admitted without objection." The trial court, after making several minor additions, approved the record as being correct and accurate.

█ Appellant asserts reversible error because the victim's bloody T-shirt, her panties and a photograph of a pool of blood were presented in a manner intended only to arouse and inflame the emotions of the jury. Reversible error occurs if evidence is introduced solely to inflame and arouse the passions of the jury. *State v. Steele*, 120 Ariz. 462, 466, 586 P.2d 1274, 1278 (1978). However, such is not the case here. We have viewed the photograph which shows a stain on a concrete floor, and cannot describe it as inflammatory. Moreover, no basis exists for finding the panties were

* Rule 31.8(f) provides:
   Statement of the Evidence for Proceedings When No Report Was Made or When the Transcript Is Unavailable. If no report of the evidence or proceedings at trial was made or if the transcript is unavailable, the clerk of the trial court shall immediately serve notice of the unavailability upon the parties and upon the clerk of the Appellate Court. Within 10 days of receipt of such notice the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection, which shall be filed with the trial court and sent to the appellee. Within 10 days after service of the appellant's statement, the appellee may prepare objections and propose amendments thereto and submit them to the trial court for approval. If the appellant does not prepare such a statement within the specified time, the appellee may prepare his own statement and submit it to the trial court for approval within 20 days of service of the notice of unavailability.
   The statement, as approved, shall be included in the record on appeal.

prejudicial. They were not stained with blood, and their introduction was not accompanied by any inflammatory statements. The bloody T-shirt remains the only conceivable basis for a finding of prejudice.

■ The prosecution maintains that appellant waived any right to urge error on appeal by failing to object to the admission of the bloody T-shirt at trial. *State v. Gonzales*, 111 Ariz. 38, 523 P.2d 66 (1974); *State v. Acosta*, 103 Ariz. 43, 436 P.2d 592 (1968). The state argues the T-shirt had probative value on the issue of premeditation because appellant refused to admit the shooting was premeditated. The state asserts the presence of gunshot residue around one of the holes in the right sleeve is probative of the fact that appellant must have been "bending over the victim when he fired at least one of the shots" and that "the victim was very likely on the ground when [appellant] fired at least one shot." Moreover, introduction of the bloody T-shirt was required to show the location of the wounds.

Appellant argues that he never contested shooting his former wife; he simply asserted the killing was not premeditated. Appellant notes that several witnesses testified regarding the location and angle of the victim's wounds. He maintains that the bloody T-shirt proved nothing and was introduced solely to play on the emotions of the jury.

■ We note initially that failure to object at trial does not preclude raising error on appeal when fundamental error is present. *State v. Newman*, 122 Ariz. 433, 595 P.2d 665 (1979). In *State v. Steele, supra*, at 464, 586 P.2d at 1276, we stated that "[t]he admission of gruesome objects such as photographs, clothing, and weapons, when introduced for no other purpose than to inflame and arouse the passions of the jury, can lead to a conviction resulting from the jury's revulsion and not from the State's proving the elements of the crime." In that case we found the display of a bloody shirt to the jury to be prejudicial and reversible error, although we acknowledged the existence of situations in which

evidence, even though gruesome, would be material to some aspect of the case. In such circumstances, admissibility depends on whether the probative value of the evidence outweighs its potential to prejudice the jury. 17A A.R.S. Arizona Rules of Evidence, rule 403.

After reviewing the circumstances in the instant case, we conclude that the probative value associated with the display of the T-shirt outweighed the potential to prejudice the jury. The state urges that introduction of the T-shirt was necessary to prove premeditation and to illustrate the location of the mortal wounds. This court has previously accepted such an argument with respect to photographs. Photographs can be admitted to aid in identifying the victim, to illustrate how the crime was committed, to aid the jury in understanding testimony, and to show the location of the mortal wounds. *State v. Schad*, 129 Ariz. 557, 571–72, 633 P.2d 366, 380–81 (1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982); *State v. Vickers*, 129 Ariz. 506, 509, 633 P.2d 315, 318 (1981); *State v. Clark*, 126 Ariz. 428, 433, 616 P.2d 888, 893, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).

In the instant case, the identity of the victim was beyond question. However, the way in which the killing occurred, or rather the position of appellant when he shot the victim, was subject to dispute. Virginia Deporto, the victim's neighbor and an eyewitness to the circumstances directly surrounding the shooting, stated that appellant was much closer to the victim at the time of the shooting than he admitted. Kenneth Kowalski, a firearms expert, testified that gunpowder residue was found around a hole in the right sleeve but not around the hole on the back of the T-shirt. From the testimony of these two witnesses, a jury could infer that the appellant shot the victim from a much closer range than he was willing to admit. The T-shirt with gunpowder residue would be probative of this fact.

The T-shirt might also have fulfilled the functions of aiding the jury to understand testimony and to show the location of the

mortal wounds. The reconstructed record indicates that a medical examiner testified regarding the severity and location of the wounds:

"After a recess, the Medical Examiner, Dr. Thomas B. Jarvis of the Maricopa County Medical Examiner's Office, testified.... He described his external examination of the body, which revealed three gunshot wounds consistent with the small caliber weapon. No projectiles were recovered in or with the body by him. There was an entrance wound in the right posterior chest (back) 15½ inches below the top of the head 1½ inches right of the posterior mid-line. The exact trajectory of the projectile through the body could not be determined due to the medical thoracotomy procedures performed in an attempt to save the victim's life....

"There were also two small caliber gunshot wounds to the right arm. There was one entrance wound in the right upper arm 4 inches below the shoulder, with a medical exit wound 5 inches below the apex of the right axilla. There is a second gunshot wound on the right arm 7 inches below the right shoulder, with the entrance and exit wound approximately ½ inch apart ...."

The expert's testimony was technical in nature. We cannot say that the introduction of the T-shirt would not have helped the average lay juror to understand the testimony regarding the location of the wounds. "The weighing and balancing under [Arizona Rules of Evidence] Rule 403 is within the discretion of the trial court and will not be disturbed on appeal unless it has been clearly abused." *State v. Clark, supra,* at 434, 616 P.2d at 894. We find no abuse of discretion. The trial court did not err in permitting introduction of the evidence.

MISSING RECORD

▮▮▮ The court reporter at appellant's trial filed an affidavit stating that the transcript for the proceeding held on April 1, 1981, the second day of trial, had been removed from her office and was unavailable. Appellant maintains that he is entitled to a new trial because a material portion of the record is missing. This argument was addressed in *State v. Masters,* 108 Ariz. 189, 192, 494 P.2d 1319, 1322 (1972).

"We are not prepared to say that in every case involving a lost or unavailable reporter's transcript the defendant is entitled to a new trial. Absent a showing of reversible error, or at least a credible and unmet allegation of reversible error, we are inclined to hold that the remaining record will suffice to support an affirmation of a verdict and judgment by the trial court. Where, however, through no fault of the defendant the reporter's transcript is unavailable and the defendant has shown prima facie error, we feel that a new trial should be granted."

In the instant case, we hold that the remaining record suffices to support the verdict and judgment of the trial court. The judge who presided at appellant's trial approved the reconstructed record as accurate. After a review of the allegedly prejudicial evidence presented at trial, we found that the trial judge did not abuse his discretion in permitting its introduction. Although appellant correctly points out that the victim's mother was present during the trial, he merely argues that she could have reacted emotionally, thereby biasing the jury. This argument is woven from pure conjecture and does not present a credible allegation of reversible error.

INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant's final contention on appeal is that he was denied effective assistance of counsel. This argument is premised upon defense counsel's failure to object to the introduction of the victim's T-shirt and panties and the photograph of the pool of blood. Appellant also contends that his defense counsel failed to object to misstatements made by the state during closing argument.

▮▮▮ The test employed in Arizona to determine ineffective assistance of counsel remains whether the representation by defense counsel was so ineffective that the

proceedings were reduced to a mere farce, sham or mockery of justice. *State v. Salinas*, 129 Ariz. 364, 366, 631 P.2d 519, 521 (1981); *State v. Dippre*, 121 Ariz. 596, 598, 592 P.2d 1252, 1254 (1979). Arizona has retained this standard despite the use of a different standard in the Ninth Circuit. Under the Ninth Circuit standard, to amount to ineffective assistance, "[d]efense counsel's errors or omissions must reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent criminal defense attorney . . . ." *Cooper v. Fitzharris*, 586 F.2d 1325, 1330 (9th Cir. 1978), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). We find that the representation afforded appellant was adequate under either standard.

Recognizing the possibility of fundamental or reversible error, this court reviewed the available record despite defense counsel's failure to object. In light of our conclusion that the admission of the evidence in question was probative and not prejudicial, a finding of ineffective assistance of counsel premised upon failure to object would be incongruous. Moreover, because appellant never specified the "misstatements" the prosecutor made, and our review of the record fails to reveal any, we are unable to label defense counsel's assistance ineffective based upon failure to object to certain "misstatements" by the prosecution. Appellant was not denied effective assistance of counsel.

The judgments of conviction and the sentences are affirmed.

HOLOHAN, C. J., GORDON, V. C. J., and CAMERON and FELDMAN, JJ., concur.