666 P.2d 1059

STATE of Arizona, Appellee,

v.

Gordon Lorey GRILZ, Appellant.

No. 5345.

Supreme Court of Arizona,
In Banc.

June 14, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Lewis & Roca by Jordan Green, Edward F. Novak, Christine A. Coffey, Phoenix, for appellant.

GORDON, Vice Chief Justice:

On May 14, 1981, appellant was convicted of one count of first degree murder in violation of A.R.S. § 13–1105 and one count of second degree murder in violation of A.R.S. § 13–1104. On June 9, 1981 he was sentenced to life imprisonment for first degree murder and twenty-one years imprisonment for second degree murder. The sentence for second degree murder was enhanced under A.R.S. § 13–604. This Court has jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and 13–4033. The judgments of conviction are affirmed. The sentence for first degree murder is affirmed. The case is remanded for resentencing in connection with the second degree murder conviction.

The victims in the instant case were Linda Grilz, appellant's estranged wife, and Kim Hopfinger, a friend of Linda's. On January 5, 1981, at approximately 9:00 p.m. appellant went to Linda Grilz' trailer home. Kim Hopfinger was there when appellant arrived. The three of them became involved in an argument in the front yard of the trailer. Appellant then shot Kim Hopfinger three times in the chest with a .22 caliber pistol. After Hopfinger had fallen down appellant shot him once more in the back of the head with a .30–30 rifle.

Apparently as appellant was shooting Hopfinger Linda went into the house and called the Sheriff's Department for help. The evidence indicated that while she was on the phone appellant forced his way into the trailer and shot her four times in the head with the .30–30.

After the shooting appellant called the Sheriff's Department from the phone in the trailer. A tape recorder attached to the telephone equipment at the Sheriff's Department recorded the call made by Linda Grilz and continued to run. When appellant called, approximately two minutes later, the call was recorded on the same tape.

When Sheriff's deputies arrived at the shooting scene appellant surrendered to them in the front yard. The deputies found appellant's .22 caliber pistol in the street by the house, the body of Kim Hopfinger and the scabbard from appellant's .30–30 in the front yard, and the body of Linda Grilz and the .30–30 in the kitchen of the trailer.

At trial appellant raised the defense of insanity based on prolonged drug and alcohol abuse. At appellant's request the jury was instructed on insanity and voluntary intoxication.

On appeal, appellant argues: (1) some photographs of the shooting scene and a part of the Sheriff's Department tape recording should not have been admitted into evidence; (2) the jury instructions given by the trial court denied him a fair trial; and (3) his sentence for second degree murder was improperly enhanced.

### Photographs and Tape Recordings

A number of photographs of the shooting scene and a tape recording of Linda Grilz' call to the Sheriff's Department were admitted into evidence at appellant's trial. Appellant objected to the admission of part of the tape and seven of the photographs. On appeal he argues that the photos and the tape were irrelevant or, if relevant, their probative value was outweighed by the danger of unfair prejudice they created.

Evidence of a type that may tend to arouse the emotions of the jury may be admitted if it is relevant, and if its probative value outweighs the danger of unfair prejudice caused by its admission. *State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983); *State v. Gerlaugh,* 134 Ariz. 164, 654 P.2d 800 (1982); *State v. Navarre,* 132 Ariz. 480, 647 P.2d 178 (1982). Moreover, the decision to admit such evidence is within the discretion of the trial court and will not be disturbed unless that discretion is abused. *State v. Chapple, supra; State v. Clark,* 126 Ariz. 428, 616 P.2d 888, *cert. denied* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).

Applying this test to the photos admitted in the instant case we find no abuse of discretion. Four of the seven photographs show the outside of the trailer from different angles and include the body of Kim Hopfinger. In two of the photos the body is covered with a blanket. One of the photos includes a side view of the victim and shows some blood.

The other three photographs were taken inside the trailer and show, among other things, the body of Linda Grilz from different angles. None of them shows the victim's head wounds but two of them show a great deal of blood on the floor and some blood spattered on the refrigerator, while the other one shows blood, bone, and tissue spattered about.

We do not find the four photos taken outside the trailer to be particularly gruesome or inflammatory. The photos taken inside the trailer, on the other hand, are of the sort that may tend to arouse emotions. We find, however, that their admission was proper.

Appellant raised the defense of insanity. The state's theory of the case was that appellant's actions were deliberate and premeditated, not the acts of one who did not know the nature of his acts or did not know right from wrong. In support of this theory the prosecutor argued that the physical layout of the scene and the distances from the street where appellant's car was parked, to the front yard where Kim Hopfinger's body and the rifle scabbard were found, to the screen door that was forced open, and to the kitchen where Linda Grilz' body and the rifle were found were such that appellant must have been aware of what he was doing as he did it, and had ample time to premeditate. The photos depict the physical layout of the scene and the distances between these objects. Consequently, they tend to corroborate the state's theory of the killings and are relevant. *State v. Caldwell,* 117 Ariz. 464, 573 P.2d 864 (1977); *State v. Thomas,* 110 Ariz. 120, 515 P.2d 865 (1973). Furthermore, we cannot say that the three photos taken inside the trailer are so inflammatory that the trial court could not have concluded that the probative value outweighed the danger of unfair prejudice attendant to their admission. Consequently, the admission of the photos was not error.

We reach the same conclusion with respect to the tape recording. The tape covers a period of about six minutes. The first ten seconds of the tape is Linda Grilz asking the officer on the phone to send the sheriff to the trailer. The officer then transfers the call to the regular dispatcher. The tape continued to run and after about two minutes appellant's call to the sheriff came through. Appellant gives the address of the trailer, tells the dispatcher that he has just killed two people, and pleads for help. Appellant objects to the part of the tape with Linda Grilz' voice.

We agree with appellant that the objected to portion of the tape is the type of evidence that may tend to arouse jurors' emotions. We also agree with the state, however, that the facts and the time frame established by the entire tape is relevant to the issue of sanity. The part of the tape with Linda Grilz' voice establishes a point in time before she was shot. The part with appellant's voice established a point in time after she was shot, and indicates appellant's state of mind at the time. The tape in its entirety indicates that no more than two minutes after appellant shot Linda Grilz he knew where he was, what he had done, and, judging by his tone of voice, that it was wrong. This evidence of appellant's state

of mind minutes after the shootings is very probative of his state of mind at the time of the shootings. Moreover, we cannot say the tape was so inflammatory that the trial court could not have found the tape's probative value to outweigh any danger of unfair prejudice its admission may have caused.

## INSTRUCTIONS

■ Appellant claims that the instructions given at his trial were improper for a host of reasons. Each of appellant's arguments are addressed below. Initially, however, it must be noted that the instructions appellant now objects to were formulated at an "informal and off the record discussion" involving the trial judge, defense counsel, and the prosecutor. The record establishes that this discussion was held with defense counsel's wholehearted approval, and defense counsel agreed to the instructions given.[1] Appellant, therefore, is in the position of claiming error based on instructions his counsel had a hand in preparing and specifically approved. If a defendant does not object to an instruction then any error is waived unless it rises to the level of fundamental error. *State v. Mincey*, 130 Ariz. 389, 636 P.2d 637 (1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982); *State v. Dippre*, 121 Ariz. 596, 592 P.2d 1252 (1979); Ariz.R. Crim.P. 21.3(c). Error is fundamental only if it "goes to the foundation of the case, or . . . takes from a defendant a right essential to his defense." *State v. Mincey*, 130 Ariz. at 397, 636 P.2d at 645 (quoting *State v. Pulliam*, 87 Ariz. 216, 222, 349 P.2d 781, 785 (1960)). "It is the rare case in which an improper instruction will justify reversal of

a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203, 212 (1977).

Appellant's first claim of error concerning jury instructions involves the part of the insanity instruction referring to the presumption of sanity. The jury was instructed as follows:

> "The defendant is presumed to have been sane at the time the offense was committed. Once sufficient evidence has been presented to raise the question of the defendant's sanity at the time of the offense, the state must prove beyond a reasonable doubt that the defendant was sane."

Appellant's argument against this instruction is twofold. First, he argues that any instruction referring to the presumption of sanity is improper. Second, he argues that the particular instruction given in this case was unconstitutional because of the way it presented the presumption of sanity to the jury.

■ In Arizona a defendant is presumed sane, but once evidence sufficient to raise a reasonable doubt as to sanity is presented the state has the burden of proving beyond a reasonable doubt that the defendant is sane. *State v. Vickers*, 129 Ariz. 506, 633 P.2d 315 (1981); *State v. Sanchez*, 117 Ariz. 369, 573 P.2d 60 (1977). Appellant claims that once he introduced sufficient evidence to raise a reasonable doubt as to sanity, the presumption of sanity was rebutted and the jury should not have been instructed on it.

The same argument was presented in *State v. Daniels*, 106 Ariz. 497, 478 P.2d 522

---

1. After a lengthy discussion on the record the trial judge decided to give an insanity instruction. The following exchange then occurred:

"THE COURT: I will give a sanity instruction, gentlemen. I would like to excuse my Clerk and the Court Reporter now, and let's do some informal and off the record discussion and hopefully get that done.

"Any objection?

"[DEFENSE COUNSEL]: I would suggest that.

"[PROSECUTOR]: No objection."

After going back on the record the following exchange occurred:

"THE COURT:

.       .       .       .       .

"Gentlemen, I have previously, informally and at length, discussed instructions in this case. An instruction has been agreed upon with respect to insanity.

"Do you have any objection as to that instruction in the form I am having it done now for submission to the jury?

"[DEFENSE COUNSEL]: No.

"[PROSECUTOR]: No, your honor."

(1970), and this court held that an instruction concerning the presumption of sanity was proper. There seem to be two explanations for the court's decision in *Daniels*. First, the court was under the impression that former A.R.S. § 13–131 (*repealed by* 1977 Ariz.Sess.Laws ch. 142, § 2) created a statutory presumption of sanity.[2] Furthermore, the court was convinced that statutory presumptions, as opposed to "presumptions of law or fact," do not vanish in the face of evidence rebutting them. Consequently, the court reasoned, the presumption continues to exist as an aid to the state in proving the defendant sane, and the jury may be so instructed.

The second explanation for the court's holding stems from the court's belief that the jury, not the trial judge, must decide whether the defendant has rebutted the presumption of sanity by introducing evidence sufficient to raise a reasonable doubt as to sanity. Because the court believed that the jury must decide whether the presumption has been rebutted, it believed that it was proper to instruct on the presumption. Following *Daniels* Arizona's appellate courts have consistently held that jury instructions referring to the presumption of sanity are proper. *See State v. Harmon,* 132 Ariz. 54, 643 P.2d 1024 (App.1982); *State v. Allen,* 27 Ariz.App. 577, 557 P.2d 176 (1976); *State v. Knaubert,* 27 Ariz.App. 53, 550 P.2d 1095 (1976).

■ We are now convinced that the holding in *State v. Daniels, supra,* is unsound. The better view is that the presumption of sanity, whether statutory or not, vanishes once the accused presents sufficient evidence to raise a reasonable doubt as to sanity, and the presumption should not be mentioned in jury instructions.

■ "There has been much erroneous thinking and more loose language in regard to presumptions. We read of presumptions of law and presumptions of fact, of conclusive presumptions and of disputable presumptions." *Seiler v. Whiting,* 52 Ariz. 542, 548, 84 P.2d 452, 454 (1938). Properly understood, however, the presumption of sanity is a procedural device that places on the defendant the burden of producing evidence sufficient to raise a reasonable doubt as to sanity. Such a presumption "is not in and of itself evidence, but merely an arbitrary rule imposed by the law, to be applied in the absence of evidence, and whenever evidence contradicting the presumption is offered the latter disappears entirely, and the triers of fact are bound to follow the usual rules of evidence in reaching their ultimate conclusion of fact." *Id.* at 548–49, 84 P.2d at 454–55; *see Englehart v. Jeep Corp.,* 122 Ariz. 256, 594 P.2d 510 (1979); *State Tax Commission v. Graybar Electric Co.,* 86 Ariz. 253, 344 P.2d 1008 (1959); *Flores v. Tucson Gas, Electric Light & Power Co.,* 54 Ariz. 460, 97 P.2d 206 (1939). This is true whether the presumption is statutory or

2. Former A.R.S. § 13–131 provided:
   "In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence. The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots nor lunatics nor affected with insanity."
   This provision was a part of Arizona's law in one form or another from 1864 until 1977. *See* 1864 Howell's Ariz.Code ch. X, §§ 1–3 (*replaced* 1871); 1864–1871 Comp.Laws of Ariz. ch. X, §§ 1–3 (*replaced* 1877); 1887 Rev.Stat. of Ariz., Penal Code §§ 20, 21 (*replaced* 1901); 1901 Rev.Stat. of Ariz., Penal Code §§ 20, 21 (*replaced* 1913) (relevant part of § 21 titled "Sound mind defined"); 1913 Rev.Stat. of Ariz., Penal Code §§ 20, 21 (*replaced* 1928); 1928 Rev.Code of Ariz. ch. 97, § 4486 (*replaced*

1939); 1939 Ariz.Code Ann. § 43–111 (*replaced* 1956); A.R.S. § 13–131 (*repealed* 1977). It is difficult to see how this provision created a presumption of sanity. The plain language of § 13–131 suggests that it did not. The first sentence of the provision states that commission of a crime requires an act and intent. The second sentence indicates that intent may be inferred if: 1) the circumstances of the crime establish that the act was intentional; and 2) the accused is of sound mind. The third sentence indicates that anyone who is not insane is of sound mind. *See also Foster v. State,* 37 Ariz. 281, 289, 294 P. 268, 271 (1930) (presumption of sanity described as a "presumption of law"); M. Udall, Arizona Law of Evidence § 194 (1960 & Supp.1975) (presumption of sanity described as "common law" as opposed to "statutory").

not. *See Department of Property Valuation v. Trico Electric Cooperative, Inc.,* 113 Ariz. 68, 546 P.2d 804 (1976); *Maricopa County v. Sperry Rand Corp.,* 112 Ariz. 579, 544 P.2d 1094 (1976); *Graham County v. Graham County Electric Cooperative, Inc.,* 109 Ariz. 468, 512 P.2d 11 (1973), and *State Tax Commission v. Phelps Dodge Corp.,* 62 Ariz. 320, 157 P.2d 693 (1945) (presumption established by A.R.S. § 42–152(B) vanishes upon introduction of contrary evidence.) [3]

▪ Furthermore, we do not believe that the question of whether the presumption of sanity has been rebutted is necessarily a jury question. It is a preliminary question as to the sufficiency of evidence. Judges are well qualified to, and routinely decide such questions. *Cf. Silva v. Traver,* 63 Ariz. 364, at 370, 162 P.2d 615 at 617–18 ("[A] ... presumption, ... must be left in the hands of the judge to administer, and not be submitted to a jury for decision of the question of whether it is 'rebutted' or ceases to have compelling force.").

▪ Because the presumption of sanity vanishes upon proof sufficient to raise a reasonable doubt as to sanity, and because trial judges are quite able to determine when that point is reached, it is not necessary to mention the presumption to the jury. Furthermore, avoiding mention of the presumption avoids the possibility of confusing the jury as to the purpose and effect of the presumption. *United States v. Hendrix,* 542 F.2d 879 (2d Cir.1976), *cert.*

denied, 430 U.S. 959, 97 S.Ct. 1609, 51 L.Ed.2d 810 (1977); M. Udall & J. Livermore, *supra* note 3, § 143, at 324. We note that our recommended jury instruction on insanity does not mention the presumption of sanity. *See* R.A.J.I. (Criminal) 5.02.

▪ The fact that we hold that the presumption of sanity should no longer be the subject of a jury instruction does not mean that the giving of an instruction mentioning the presumption is fundamental error. As long as the jury is clearly instructed that the state has the burden of proving the accused sane beyond a reasonable doubt, mention of the presumption of sanity is not fundamental error. *United States v. Hendrix, supra;* and *United States v. Retolaza,* 398 F.2d 235 (4th Cir.1968), *cert. denied,* 393 U.S. 1032, 89 S.Ct. 646, 21 L.Ed.2d 576 (1969) (giving of instruction on the presumption of sanity is not plain error and does not require reversal in absence of objection). The jury in the instant case was so instructed. We find that the giving of the instruction in the instant case was not fundamental error merely because it mentioned the presumption of sanity.

Nor can we agree with appellant that the presumption of sanity as presented by this instruction is unconstitutional. The instruction in the instant case informed the jury that the presumption of sanity is rebutted and the burden of proving the defendant sane falls upon the state "[o]nce

3. There is a line of cases holding that statutory presumptions differ from non-statutory presumptions in that they are given greater weight and do not vanish upon production of evidence rebutting them. *See Englehart v. Jeep Corp., supra; State v. Daniels, supra; Arizona Corporation Commission v. Reliable Transportation Co.,* 86 Ariz. 363, 346 P.2d 1091 (1960); *Mitchell v. Emblade,* 81 Ariz. 121, 301 P.2d 1032 (1956). This line of cases is based on *Flores v. Tucson Gas, Electric Light & Power Co., supra.* In *Flores* the court discussed a statute that made proof of certain basic facts prima facie evidence of negligence. The court stated that "[i]n such a case it may well be held that a conflict in the evidence exists which takes the case to the jury." *Id.* at 465, 97 P.2d at 208. We believe that *State Tax Commission v. Phelps Dodge Corp., supra,* decided after *Flores,* is better reasoned. When the party

against whom the statutory presumption operates has met the burden of production or proof imposed by the presumption then "the presumption has spent its force and served its purpose, and the party in whose behalf it has theretofore operated must meet the opponent's ... case *with evidence and not with presumptions.*" *State Tax Commission v. Phelps Dodge Corp.,* 62 Ariz. at 330, 157 P.2d at 697 (emphasis in original). In some cases, the basic facts that bring the presumption into effect are themselves relevant in that they tend to establish the existence of the presumed fact independent of the presumption. Though the presumption still vanishes in such cases, the proof of the basic facts remain for the trier of fact to evaluate. *See* M. Udall & J. Livermore, *Arizona Practice, Law of Evidence* § 143 n. 4 (2d ed. 1982).

sufficient evidence has been presented to *raise the question* of the defendant's sanity * * *." (emphasis added) Appellant argues that it should have stated that the presumption is rebutted and the state put to its burden once sufficient evidence has been presented to *raise a reasonable doubt* as to the defendant's sanity.

In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the United States Supreme Court stated that the constitutional analysis applicable to jury instructions dealing with presumptions depends upon the nature of the presumption described by the instruction. In determining the nature of the presumption, the instruction must be interpreted as a reasonable juror could have interpreted it. *Id.* In criminal cases, the ultimate test of any presumption's constitutional validity is this: "the device must not undermine the factfinder's responsibility at trial, based on evidence * * * to find the ultimate facts beyond a reasonable doubt." *County Court of Ulster County v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777, 791 (1979).

In *Ulster County* and *Sandstrom* the Court identified several kinds of presumptions. A "permissive presumption" is really nothing more than an inference. It allows the trier of fact to infer the presumed fact from proof of the basic facts, but places no burden of any kind on the defendant. *County Court of Ulster County v. Allen, supra.* A "mandatory presumption" requires the trier of fact to find the presumed fact upon proof of the basic fact unless the defendant has presented some evidence to rebut the presumption. *Id.* The class of mandatory presumptions is further divided into two parts. There are mandatory presumptions that merely shift the burden of production to the defendant. Once the defendant meets that burden the ultimate burden of proof is on the prosecution. *Id.* The second type of mandatory presumption entirely shifts the burden of proof to the defendant. *Id.* Finally, a "conclusive presumption" is simply a rule of law. It is irrebutable and requires the trier of fact to find the presumed fact once the basic facts

are established. *Sandstrom v. Montana, supra.*

The presumption of sanity is somewhat different from the presumptions discussed in *Ulster County* and *Sandstrom.* It operates, or has effect, in the absence of any proof on the issue rather than upon proof of some basic facts. Nonetheless, it may still be analyzed for its constitutional validity in the same terms. An examination of the instruction given in the instant case clearly indicates that the presumption of sanity it describes is more than a "permissive presumption" or inference. A reasonable juror hearing that instruction could have interpreted it as requiring, in the absence of some proof of insanity, a finding that appellant was sane.

It is equally clear that the instruction does not describe a "conclusive presumption." No reasonable juror could have interpreted that instruction as creating an irrebutable rule of law requiring the jury to find appellant sane.

Furthermore, we believe no reasonable juror could have interpreted the challenged instruction as describing a mandatory presumption that shifted the burden of proof on the issue of sanity to appellant. The instruction clearly states that once the question of sanity has been raised the state has the burden of proof on the issue. To interpret the instruction as requiring appellant to prove himself insane in order to raise the question of sanity is unreasonable. Under such an interpretation both the state and appellant would have the burden of proof on the sanity issue. That is logically impossible and we are convinced that no reasonable juror could have interpreted the instruction in that fashion.

We cannot conceive of a reasonable juror interpreting the instruction at issue as describing anything other than what the *Ulster County* Court termed a mandatory presumption that placed on appellant a burden of production. While the instruction did not define that burden of production in the precise language of this court's opinions,— sufficient evidence to raise a reasonable doubt as to sanity—the language used—

"sufficient evidence * * * to raise the question of defendant's sanity"—does not describe a significantly different burden. It is well settled that a presumption of sanity which places only a burden of production on the defendant is constitutionally permissible. *Davis v. United States,* 160 U.S. 469, 486–87, 16 S.Ct. 353, 358, 40 L.Ed. 499, 505 (1895) ("where the defense is insanity, * * * the accused is bound to produce some evidence that will impair or weaken the force of the legal presumption in favor of sanity"); Jeffries & Stephan, *Defenses, Presumptions, and Burdens of Proof in the Criminal Law,* 88 Yale L.J. 1325, 1334 (1979); *cf. Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (state may constitutionally require defendant to prove insanity beyond a reasonable doubt).

Furthermore, the record establishes that the jury in the instant case was convinced that appellant met his burden of production, and it put the state to the burden of proving the defendant sane. At appellant's trial he called two medical experts to testify in support of his insanity defense. The state then called two medical experts, one of them a Dr. Wellish, to testify in rebuttal. After the jurors retired to deliberate they sent a note to the judge saying:

> "Transcript of Testimony of Dr. Wellish: Did he say the defendant knew right from wrong at the time of incident."

After discussion with counsel the judge sent back a note saying:

> "We do not have a written transcript of the testimony, do you want to have Dr. Wellish's testimony read back to you, either all or part?"

The jurors answered with a note that read:

> "Yes. In part—The part that follows where he said based on his opinion emotionally unstable personality."

The pertinent testimony was located and read to the jury. If the jurors had not been convinced that the question of appellant's sanity had been raised there would have been no reason for them to consider the state's evidence of sanity. It is clear, however, that they did. We hold that the presumption of sanity as presented by the challenged instruction was not unconstitutional.

Appellant's next claim of error regarding jury instructions involves another part of the insanity instruction. He claims that the instruction misstates the Arizona insanity rule. Appellant's claim is without merit. The instruction makes it quite clear that appellant was not sane if either he did not know right from wrong, or if he did not know the nature or quality of his act.

Appellant's final claim with respect to jury instructions is that the instructions concerning insanity and intoxication were misleading and contradictory. Again, appellant's claim is without merit. The instructions adequately explained the law on the issues of insanity brought about by prolonged use of liquor or drugs, and voluntary intoxication.

### Enhanced Sentences

Appellant claims that his sentence for the second degree murder of Kim Hopfinger was improperly enhanced under A.R.S. § 13–604(K) without the requirements of that provision having been met. We agree.

A.R.S. § 13–604(K) provides in pertinent part:

> "The penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if * * * the dangerous nature of the felony is charged in the indictment or information and admitted or found by the trier of fact * * *. For purposes of this subsection, 'dangerous nature of the felony' means a felony involving the use or exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury upon another."

Section 13–604(K) requires a specific finding by the trier of fact that the crime either involved the use or exhibition of a deadly weapon or dangerous instrument, or that the crime involved the intentional or knowing infliction of serious physical injury. *State v. Barrett,* 132 Ariz. 88, 644 P.2d 242 (1982); *State v. Parker,* 128 Ariz. 97, 624 P.2d 294 (1981). That requirement may be

satisfied in either of two ways. First, the state may request a separate form of verdict to be returned if the jury finds dangerous nature within the meaning of § 13–604(K). *See State v. Barrett, supra; State v. Parker, supra.* Second, the offense charged may, by its nature, contain an allegation and require proof of dangerous nature as defined in § 13–604(K). *See State v. Parker, supra; State v. Tresize,* 127 Ariz. 571, 623 P.2d 1 (1980).

■ The jury in the instant case was not given a dangerous nature form of verdict and made no specific finding of dangerous nature. Consequently, enhancement of appellant's sentence was proper only if the jury's general verdict of guilty of second degree murder necessarily included a finding that appellant used a deadly weapon, or intentionally or knowingly inflicted serious physical injury.

Because use or exhibition of a deadly weapon or dangerous instrument is not an element of second degree murder the general guilty verdict does not necessarily include such a finding. *State v. Barrett, supra.* Furthermore, the fact that the evidence at trial showed the use of a deadly weapon does not satisfy A.R.S. § 13–604(K). *State v. Parker, supra.*

Similarly, because of the manner in which second degree murder was submitted to the jury, the guilty verdict does not necessarily include a finding that appellant intentionally or knowingly inflicted serious physical injury on another. The jury was instructed as follows:

"The difference between first degree murder and second degree murder is that second degree murder does not require premeditation by the defendant.

"The crime of second degree murder requires proof that:

"The defendant intentionally killed another person;

or

"The defendant caused the death of another person by conduct which he knew would cause death or serious physical injury;

or

"Under circumstances which plainly showed an extreme indifference to human life, the defendant caused the death of another person by consciously disregarding a grave risk of death. The risk must be such that disregarding it was a gross deviation from what a reasonable person would have done."

Working with this instruction, the jury may have found appellant guilty of second degree murder because, under circumstances showing an indifference to human life, he caused the death of Kim Hopfinger by consciously disregarding a grave risk of death. If that is the case, the jury did not make the dangerous nature finding required by § 13–604(K). The jury's verdict, therefore, did not necessarily include a finding that appellant intentionally or knowingly inflicted serious physical injury, and his sentence should not have been enhanced. *See State v. Miller,* 135 Ariz. 8, 658 P.2d 808 (App. 1982). This case dramatically demonstrates why "the better practice is for the prosecution to always request a separate form of verdict for dangerous nature in addition to the form of verdict for guilt when it seeks the enhanced punishment provisions of A.R.S. § 13–604." *State v. Barrett,* 132 Ariz. at 90, 644 P.2d at 244. The case must be remanded for resentencing in connection with appellant's second degree murder conviction.

We have examined the record for fundamental error as required by A.R.S. § 13–4035 and find none. The judgments of convictions for first degree murder and second degree murder are affirmed. The sentence in connection with the first degree murder conviction is affirmed, and the case is remanded for resentencing in connection with the second degree murder conviction.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.