669 P.2d 83

**STATE of Arizona, Appellee,**

v.

**Guy Nelson SPOON, Appellant.**

**No. 5224.**

Supreme Court of Arizona,
In Banc.

July 6, 1983.
Rehearing Denied Sept. 13, 1983.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Division, Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

John D. Cody, Sierra Vista, for appellant.

GORDON, Vice Chief Justice:

A jury found the defendant, Guy Nelson Spoon, guilty of first degree murder in the stabbing death of Donald R. Smith. Following an aggravation-mitigation hearing, the defendant was sentenced to death. The defendant appealed from the judgment and sentence. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031. The conviction is reversed.

The victim, Donald R. Smith, worked as the night manager of the Local Alcohol Rehabilitation Center (L.A.R.C.) in Douglas, Arizona. At approximately 5:30 a.m. on February 17, 1980 employees of the center found the victim's body on the floor of a first floor apartment. The upstairs apartment of the facility had been vandalized and two butcher knives were missing from the upstairs kitchen. The defendant had been staying at the L.A.R.C. facility but was missing on the day the murder was discovered. The following facts were taken from the defendant's taped confession made on March 23, 1980:

Spoon had been drinking for several hours on the evening of February 16, 1980. Witnesses testified that he had consumed 8–10 beers over a period of five hours. The defendant returned to the L.A.R.C. at approximately 1:30 a.m. the morning of February 17th. He went up the back stairs of the building and entered an upstairs apartment through a window. After taking food from the pantry, Spoon discharged the contents of a fire extinguisher that he had found in the apartment. The fire alarm went off and in order to stop it Spoon threw it down on the floor. After taking two knives, Spoon left the apartment through the back and came around to the front of the building. At the same time the defendant was approaching the front door of the building the victim was coming down the stairs after he had presumably been investigating the noise upstairs. Smith confronted the defendant regarding the noise upstairs and, according to the defendant, started calling him names, hit him and scratched him on his face. Spoon responded by pulling a knife on the victim, and fol-

lowed him into the night manager's residence quarters where he "poked at" the victim and "stabbed him in the back." The evidence at trial indicated that the victim, who was 58 years old, had been stabbed twenty times with resulting wounds in the chest, back, and arms. He ultimately died from massive bleeding. After attacking the victim, Spoon rolled him over and took Smith's car keys out of his pocket. He left the L.A.R.C. in the victim's car, and after abandoning the car in California, hitchhiked to San Francisco, finally ending up at his sister's home in Walnut Creek. The defendant turned himself in to the Contra Costa Sheriff's Department on February 21, 1980. He was held in custody on the basis of a warrant that had been issued due to Spoon's violation of probation arising from his alleged beating of his ex-wife.

### Admissibility of Spoon's Confession

Following the murder of Smith, Charles Austin of the Douglas Police Department was placed in charge of the investigation. On February 19, 1980 Austin contacted David Stoeffler, the defendant's probation officer in California, and advised him of the Arizona homicide. Although Stoeffler did not know Spoon's whereabouts at the time, he agreed to contact Austin if the defendant was located. After turning himself in on February 21st, Spoon called Stoeffler and told him that he had been in Douglas, Arizona, had hitchhiked back to northern California, and was now in the Contra Costa County Jail. Stoeffler then called Austin and told him that the defendant was in custody. That same day, Austin called Detective Floyd Snodgrass of the Contra Costa Sheriff's Department and explained that Spoon was a suspect in the Arizona homicide. Austin asked Snodgrass to approach Spoon to see what he knew about the homicide in Douglas and find out why he left Arizona. Snodgrass agreed to do so and went to see Spoon at the jail immediately thereafter. Initially the defendant waived his *Miranda* rights and talked freely with Snodgrass about his stay in Douglas and his trip back to California. Snodgrass then asked if he could tape an interview with Spoon. Snodgrass re-advised the defendant

of his *Miranda* rights and at that point Spoon invoked those rights stating that he should talk to an attorney before saying anything further. Snodgrass halted his discussions with Spoon and advised Detective Austin that he had invoked his *Miranda* rights. At a later date he contacted Stoeffler to relay the information regarding the defendant's invocation of his right to counsel.

On February 27, 1980 Stoeffler contacted Snodgrass and asked if he could arrange a polygraph examination of the defendant. Snodgrass declined to do so "because of the fact that Mr. Spoon had invoked his *Miranda* rights with me, and unless he reinitiated an interview with me, I couldn't talk to him." On March 11, 1980 Stoeffler visited Spoon at the jail and discussed both his probation violation and the Arizona homicide. After hearing the defendant's story about his stay in Douglas, Stoeffler asked if he would be willing to take a polygraph examination. Spoon agreed to do so. Stoeffler called Austin later the same day and advised him that the defendant was willing to take the polygraph. Sometime later Detective Austin called Snodgrass and asked if he would reapproach Spoon to see if he was still willing to take the polygraph. Snodgrass refused to do so in light of Spoon's prior request to see an attorney. As a result, Austin contacted Stoeffler on March 18, 1980 with the same request. Stoeffler agreed to go see Spoon and visited him at the jail the next day. Spoon still agreed to take the polygraph. Stoeffler relayed this information to Austin who went to California a few days later with Bill Bangs, a polygraph examiner for the Arizona Department of Public Safety.

On March 23, 1980 Bangs and Austin met with the defendant at the Contra Costa County Jail in order to administer the polygraph examination. Spoon signed a stipulation consenting to take the polygraph examination. The stipulation contained a modified *Miranda* warning advising Spoon of his right to remain silent and his right to counsel. Bangs explained to the defendant

that he could refuse to take the test and that the results could be used against him at later proceedings. Spoon still agreed to take the polygraph. The polygraph examination was then given to Spoon and the results revealed that the defendant had given deceptive answers to Bangs' questions. After Bangs told the defendant the results of the test Spoon admitted that he was lying on all segments of the test and then confessed to Bangs that he had killed the victim. Spoon repeated his confession to Detective Austin who then asked the defendant if he would be willing to restate his confession on tape. Spoon agreed to do so. The taped confession was introduced at trial and constituted the majority of the state's case against the defendant.

The defendant was not provided with an attorney at any time after he invoked his right to counsel on February 21, 1980 or prior to his confession on March 23, 1980. The record reflects that the defendant was first provided with an attorney on June 9, 1980 at the time of his arraignment in the Superior Court of Cochise County, Arizona. The defendant claims that the trial court erred in denying his motion to suppress the confessions [1] made in California.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the Supreme Court stated that when an individual is subject to custodial interrogation, the authorities must follow specific procedures in honoring his or her right to counsel:

"Once [*Miranda*] warnings have been given, the subsequent procedure is clear. * * * If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual

cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

*Id.* at 473–74, 86 S.Ct. at 1627–28, 16 L.Ed.2d at 723. The Supreme Court held in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), that

"[W]hen an accused has invoked his right to have counsel present during custodial interrogation, *a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation* even if he has been advised of his rights. We further hold that an accused, * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges or conversations with the police.* (emphasis added.)

*Id.* at 484, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. The State argues that Stoeffler's contacts with the defendant after February 21st were permissible since he was performing his duties as a probation officer. Thus, when Spoon told Stoeffler that he would take the polygraph examination he was in fact initiating communication with the police. We disagree.

■ The facts outlined earlier in this opinion establish that Stoeffler was acting as an agent of the Arizona officials for the purpose of discussing the Arizona homicide with the defendant. Stoeffler's notes attached to Spoon's Contra Costa County Adult Probation Record indicate that he regularly contacted Detective Austin with updates on conversations that he was having with the defendant and that a primary purpose in his meetings with Spoon was to

1. Although the March 23, 1980 taped confession was the only confession introduced in total at trial, testimony was given concerning his preliminary confessions given earlier that day to Bill Bangs and Detective Austin. David Stoeffler also gave testimony concerning an additional confession made by the defendant to

him on May 5, 1980. For the same reasons that we rule that the taped confession is inadmissible, we also conclude these confessions were gained in violation of the defendant's right to counsel as discussed in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

assist the Arizona authorities in their investigation of the homicide.

Detective Snodgrass' testimony indicates that Detective Austin and Stoeffler were aware of the fact that Spoon had stopped his February 21st conversation with Snodgrass by requesting to speak with an attorney. No counsel was provided for Spoon prior to the confession. The record reveals that Spoon did not "initiate further communication" at any time after he invoked his right to counsel on February 21, 1980 or before he confessed on March 23, 1980. In light of the Supreme Court's holding in *Edwards,* we do not believe that the authorities properly respected the defendant's invocation of his right to counsel. Hence, the defendant's confession was inadmissible.

█ The State argues that even if we find that the confession was inadmissible, we should conclude that its use at trial was harmless beyond a reasonable doubt. The state's argument is based on the fact that the defendant admitted the killing, and at trial relied entirely upon defenses of insanity, intoxication, and provocation. While it is true that the defense admitted the killing at trial, its motivation for doing so may have been due to the fact that the trial court had denied the defendant's motion to suppress the confession. Aside from the confession, the state presented only a minimal amount of evidence which supported the conclusion that the defendant committed the homicide. We can think of no piece of evidence that would be more detrimental to a defendant's case than the playing of a taped confession to a jury. Therefore, we cannot say beyond a reasonable doubt that the jury would have reached the same verdict if the confession had not been introduced at trial. *State v. McVay,* 127 Ariz. 450, 622 P.2d 9 (1980).

In view of the possibility that a new trial will be sought by the prosecution, we feel it necessary to deal with the following issues:

### Instruction

The defendant claims that the following instruction shifted the burden to the defendant to disprove that he intended his actions:

"The state must prove that the defendant has done an act which is forbidden by law and that he intended to do it. You may determine that the defendant intended to do the act if he did it voluntarily. The state does not have to prove that the defendant knew the act was forbidden by law."

He relies on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) which held that an instruction stating that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violated the requirement of the Fourteenth Amendment that the state prove every element of a criminal offense beyond a reasonable doubt.

In *Sandstrom* the Court noted that "the threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes." *Id.* at 514, 99 S.Ct. at 2454, 61 L.Ed.2d at 45. The Arizona Court of Appeals has recently stated in a decision addressing the constitutionality of an identical instruction that "we must first determine if the presumption is mandatory or permissive." *State v. Lopez,* 134 Ariz. 469, 472, 657 P.2d 882, 885 (1982). In *State v. Grilz,* 136 Ariz. 450, 666 P.2d 1059 (1983) we recently explained the difference between mandatory and permissive presumptions as follows:

"A 'permissive presumption' is really nothing more than an inference. It allows the trier of fact to infer the presumed fact from proof of the basic facts, but places no burden of any kind on the defendant. *County Court of Ulster County v. Allen,* [442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777] *supra.* A 'mandatory presumption' requires the trier of fact to find the presumed fact upon proof of the basic fact unless the defendant has presented some evidence to rebut the presumption. *Id.*"

*State v. Grilz, supra,* 666 P.2d at 1066.

█ In determining the nature of the presumption, the words actually spoken to the jury must be examined and interpreted

as a reasonable juror could have interpreted them. *Sandstrom v. Montana, supra.* The critical language in the objected to instruction states: "You *may* determine that the defendant intended to do the act if he did it voluntarily." (emphasis added.) We believe that the use of the word "may" establishes the permissive character of the instruction. We agree with the Court of Appeals' statement in *Lopez* that the instruction "did not by its language tell the jury that proof showing the appellant voluntarily committed an act established that he intended it. Rather *it allowed the jury* to find that he intended to do the act if it was shown that he did it voluntarily." (emphasis added) 134 Ariz. at 472, 657 P.2d at 885. We believe that a reasonable juror could only have interpreted the instruction as a "permissive presumption" which, as stated in *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), places no burden of any kind on the defendant. *See also Hardy v. United States,* 691 F.2d 39 (1st Cir.1982); *United States v. Mayo,* 646 F.2d 369 (9th Cir.1981), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981); *United States v. Ross,* 626 F.2d 77 (9th Cir.1980).

■ Once an instruction has been found to create a "permissive presumption," its use at trial is constitutional if there is a rational connection between the predicate and presumed facts. *McInerney v. Berman,* 621 F.2d 20 (1st Cir.1980), *cert. denied,* 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 85 (1980) *citing Ulster County v. Allen, supra.* In other words, is the proven fact that the defendant voluntarily did an act rationally connected to the presumed intent to do the act? We agree with the Court of Appeals' conclusion in *Lopez* that there is a rational relation between an individual's voluntary action and his intent to act. We therefore find that there was no error in giving the objected to instruction.

### Felony-Murder

The defendant next claims that the trial court erred in instructing the jury on felony-murder since the underlying felony was assault. Since assault merges with the homicide itself, see *State v. Essman,* 98 Ariz. 228, 403 P.2d 540 (1965), the defendant contends that there was no felony "independent" of the resulting crime of murder.

■ The record indicates that burglary, rather than assault, was the basis of the felony-murder instruction. Under A.R.S. § 13–1105(A)(2) "[a] person commits first degree murder if: * * * [a]cting alone or with one or more other persons such person commits or attempts to commit * * * burglary under § 13–1506, 13–1507 or 13–1508 * * * and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person." The trial judge gave the jury the following definition of burglary: "Burglary is the entering or remaining unlawfully in a residential or nonresidential structure with the intent to commit any theft *or any felony therein.*" (emphasis added.) The jury was then instructed on aggravated assault and told that "[t]he underlying alleged felony in the alleged burglary which is a claimed basis to one of the alternative charges of first degree murder is aggravated assault." In *State v. Miller,* 110 Ariz. 489, 520 P.2d 1113 (1974) we held that a burglary predicated on an aggravated assault can serve as basis for a felony-murder conviction. We are not willing to depart from that position. The record in the case at bench supports the claim that the defendant entered the downstairs apartment armed with a knife intending to assault the victim. Thus, the burglary underlying the charge of felony-murder occurred the instant the defendant entered the apartment with the intent to commit an aggravated assault. The trial court properly instructed the jury on felony-murder.

### Jailhouse Confessions

At trial two individuals testified about statements Spoon made to them while in jail prior to trial. The defendant now asserts that the testimony was irrelevant and claims that its prejudicial effect outweighed its probative value.

At the outset we note that the trial court properly treated the testimony as non-hearsay under Ariz.R.Evid. 801(d)(2)(A) since the testimony was given for the purpose of introducing the defendant's own statements against him. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz.R.Evid. 401. Reasonable discretion is given to the trial court in determining relevancy of offered evidence, and such discretion will not be disturbed on appeal unless it clearly has been abused. *State v. Adamson,* 136 Ariz. 250, 665 P.2d 972 (1983); *State v. Mosley,* 119 Ariz. 393, 581 P.2d 238 (1978). Likewise, the same standards are recognized when an appellate court reviews the admissibility of evidence under Ariz.R. Evid. 403 relating to the exclusion of relevant evidence when its probative value is outweighed by the danger of unfair prejudice. *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). We do not believe that the trial court abused its discretion in admitting this evidence. Frances Vasquez testified that she was having a conversation with the defendant about why he was in jail during the course of which he stated that his victim "deserved it" because "he got up and slapped him." Lanya Anton also met Spoon in jail and testified that he made similar statements to her about the crime. These statements are relevant since they have a "tendency" to show that the defendant was responsible for the homicide, and since they show Spoon's state of mind at the time of the homicide the statements are useful in rebutting the defendant's defenses of insanity and intoxication. For the same reasons the defendant's admissions are probative. We do not believe that they are unduly prejudicial, as the defendant claims, for the reason that they were made by the defendant for the purpose of "bragging." In actuality, the defendant's claim attacks the weight to be given to the statements which is a matter left to the consideration of the trier of fact. *State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983). The testimony was properly admitted.

As a result of the violation of the defendant's right to counsel, the trial court's judgment of conviction of first degree murder is reversed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.